Let's call up 19-6034 United States v. Sanchez. Mr. G? Yes, Nick. This is Ty G representing Mr. Sanchez, the appellant in this case. As the court has noticed from reading the record, this case involves a large conspiracy, what we call the Lopez Conspiracy. Mr. Bernal Lopez being the head of that conspiracy that delivered cocaine and other drugs, including methamphetamine, in the Oklahoma City area. The question I want to focus on this morning is the sentencing error made by the district judge in considering or actually not having the information needed to find that Mr. Sanchez was responsible for one pound and one ounce of methamphetamine that supposedly was ordered and delivered on March 24, 2017. This March 24 transaction was not charged in the superseding indictment. There was no evidence presented about the March 24, 2017 alleged order from Mr. Sanchez and alleged delivery to Mr. Sanchez. The trial court in sentencing Mr. Sanchez imposed a sentence based on what he believed to be evidence of the March 24, 2017 transaction introduced into the record. Such a trial court was incorrect. In fact, no such information, no such evidence had been introduced at trial on this March 24 transaction. The probation officer vaguely talked about information she had and suggested that this information had been admitted into evidence, but she was incorrect as well. The government appears to acknowledge in its answer brief that, in fact, there was no such evidence of the March 24 transaction introduced into evidence, specifically no evidence that Mr. Sanchez ordered and that Mr. Sanchez received any methamphetamine on March 24, 2017. Based on this own court's interview on sentencing errors, there simply was no record of evidence to support the trial court's finding that Mr. Sanchez had requested or received the one pound and one ounce that was attributable to him by both the probation officer and then subsequently the trial court. So, on that basis, we would request a reversal or remand for resentencing on the question of that one pound and one ounce. Mr. Chichibu, this is Judge Sienkiewicz. Wasn't that error harmless? It was not harmless in that the sentencing court was clearly inclined to give a lenient sentence to Mr. Sanchez since he varied downward. The question always in these kinds of cases, Judge Sienkiewicz, is what would have happened had the trial court availed...if it had the correct information in front of it? And what would have happened had the trial court... The guideline range would have changed, would it? The guideline range would not have changed, but we already know that the trial court varied downward. And the question is, how much more or not would the trial court have varied downward had it had the correct information? And as we pointed out in our reply brief, Judge Gorsuch has suggested that...then Judge Gorsuch suggested that we do not know what a trial judge would have done had it not been under a misapprehension about the facts. So, we suggest, Your Honor, that it's a case that deserves a remand. But if we throw out the...what is it, the March 24th transaction? I'm sorry, I didn't catch that. If we throw out the March 24th transaction, you're still going to be looking at over 2,000 grams of methamphetamine that he would be charged with. Is it reasonable to assume that that relatively slight decline in the amounts would have made a difference to the sentencing judge? Well, this is the point I think that I'm making, Judge Tunkovich, that we don't know the answer to that. And Your Honor is correct, of course, that this is a one pound and one ounce compared with the rest of the methamphetamine for which there was record support. But when the trial judge has already indicated his interest in varying downward on the sentence, we suggest that the trial court ought to be permitted to make a decision on the appropriate sentence for this defendant based on the correct information. Thank you. Judge Briscoe, do you have any questions on sentencing? Yes, I do. Counsel, I was looking at the record in this case, and it seemed to me that the FBI report contained statements from the agent that dealt with an interview with Mr. Lopez, and it tells us about two calls on March 24, 2017, and basically give us the background of discussing a purchase of one pound, one ounce of methamphetamine. And it goes on from there, and they talk about delivery and who's going to do it, et cetera. Doesn't that report provide the district court with evidence? It does not, Your Honor. I think the court is referring to the two pages in Supplemental Volume 2, pages 26 and 241, that the government relied on in its answer brief. I think it's fine for the government to rely on that, but the trial court was not aware of these things when it imposed the sentence that it did and when it made the finding of one pound and one ounce of methamphetamine delivered on March 24, 2017. We know this because the trial court said it was only considering the trial evidence and not that Supplemental Volume 4, page 126. And when it's only considering trial evidence and the government concedes that neither of those pages from Supplemental Volume 2 made it into the trial evidence... Was that information in the pre-sentence report? That information was not in the pre-sentence report, at least not specifically. There was... I think there were general references to it, but there was no indication that she was citing to these specific reports. In fact, my understanding, my recall, is that there was reliance on some discovery materials. These may have been the discovery materials. I don't have the base numbers. She was referring to discovery materials by base numbers. Yes, in the base number documents she was referring to, but as I point out, Judge Briscoe, none of this was admitted into evidence at trial, which is the trial... Well, it doesn't have to be admitted into evidence at trial for the sentencing judge to look at relevant evidence to sentence, does it? Yes, I agree, Judge Briscoe, but there was no indication that the trial court ever was looking at either one of these pages from Supplemental Volume 2. So the amount of methamphetamine considered by the district court did not, in your view, include this amount or did include this amount? I'm sorry. I missed the first part of your question, Judge. As far as you understand, did the total amount of methamphetamine that the district court relied on, did it include those amounts that are involved in the March 24 transaction? The trial court included the one pound, one ounce that supposedly was delivered on March 24, 2017, but that was simply based on the probation officer's own mistake about what evidence was introduced into trial. But the trial judge clearly was not considering anything other than what was included in the trial evidence. And as we showed in our papers, there simply was no evidence that supported that one pound, one ounce. I don't have any further questions on this issue. Are you waiving the conspiracy issue? I'm sorry? Are you waiving your first issue? I just wanted to focus on this issue because I thought that this issue was clearer. I have no other questions on the sentencing issue. Judge Matheson, do you have any questions on sentencing? Just one. Counsel, back to the harmless error aspect of this, didn't the court vary downward for reasons unrelated to quantity? It was not directly related to the quantity. On the other hand, the question, I guess, Judge Matheson, is not whether it varied downward based on quantity. It's whether that downward variance would have been greater had the trial court known that the one pound and one ounce additional amount of methamphetamine was not supported by the trial evidence. In other words, if we take away the one pound and one ounce, whether the trial judge would have thought greater lenience would have been appropriate. Thank you. You may proceed, Mr. G. The only other point I wanted to make concerns the conspiracy conviction that Judge Briscoe just mentioned. That is that I think the key question for the court is probably going to be the question of whether there was prejudicial variance. I don't have much more to say about that beyond what we put in our papers, other than to say that even if the court finds that there was no prejudice, there is the question of sentencing prejudice. In other words, if this court were to reverse or even to make a finding that Mr. Sanchez did not participate in the large conspiracy, that also might suggest to the trial court that a greater variance is required that sentencing. I'll reserve the remainder of my time for rebuttal. Thank you, counsel. I might add, I don't know if it's your connection or my connection, but your sound quality deteriorated during your presentation, so you might double check. Okay, let's hear them from your colleague, Mr. Krieger. Thank you, Judge Timkovich. And may it please the court, Stephen Krieger on behalf of the United States. Since Mr. Gee spent most of his time on the sentencing issue, I'll start with that. The district court didn't clearly err when it found Mr. Sanchez was accountable for the drugs involved in the March 24th transaction. This court's review was for clear error. And under clear error review, the question is whether based on the entirety of the record, not just the record at trial, and Mr. Gee, in responding to questions from Judge Visco, admitted to this, but to the entire, not just the trial record, but the entirety of the record. And here, evidence for the NIDA trial, specifically the March 24th phone call between Omar Delgado and Mr. Bernal Lopez, and the line sheets that were provided to the district court pre-trial, showed not only that the drug quantity at issue there, or the drug quantity suggested was 1.5 pounds, not only was to be delivered to Mr. Sanchez by Mr. Omar Delgado, but there was confirmation that Mr. Sanchez had in fact received drugs from Mr. Omar Delgado. Thus, this court should not be left with a strong or firm belief that the district court erred when it made that conclusion. But even if this court were, any error was harmless. As this court has pointed out, and as Mr. Gee conceded, the March 24th drug transaction, which the district court put at 1 pound and 1 ounce, did not affect the guideline range. And this court explained in battle that any error in the district court's drug quantity findings is harmless if it does not affect the guideline range. Yes, the district court in this case varied downward from 100 to 132 months, where the statutory minimum for a conspiracy involving 500 grams or more of methamphetamine was 120 months imprisonment. This means that the 132 month sentence, which there was a variance downward for, is only 12 months above the statutory minimum. Even ignoring battle for a moment, which this court would be bound by as a published decision, there still is not any showing of harmlessness because the district court lost so little in terms of those drugs. It went down from, I believe it was about 2,660 grams with the March 24th transaction, and went down to about 2,180 grams without the March 24th transaction. And because it relates to sentencing, just to touch on the alleged sentencing variance problem that Mr. Sanchez pointed out, while the government doesn't concede that there was a variance, and the government strongly would urge that there was no variance, if there was a variance... Since you're back on the conspiracy, here Mr. Sanchez only made a few purchases over a month or so period of time. The conspiracy lasted a much longer time with a lot more individuals. Just looking at our Evans case, just because he knew he was part of some illegal drug dealing, that doesn't mean he was aware of the larger conspiracy. He's pretty much a small time player given the scope of the conspiracy. Why isn't it more fair to view the evidence that it only establishes that he participated in a small conspiracy that was distinct from the larger activity? Well, Your Honor, in Evans, this court reversed on the defendant who had only purchased one time. Here, Mr. Sanchez, there was evidence presented that he purchased upwards of seven times. Additionally, the defendant in Evans, whose conviction was reversed, only purchased four ounces of drugs. Here, Mr. Sanchez purchased anywhere between a half pound and three pounds of methamphetamine from Mr. Lopez. This distinguishes this case from Evans. In addition to that, Mr. Sanchez said that he had clients waiting to purchase the drugs where the defendant, whose conviction was reversed in Evans, did not have clients waiting. This court said that it's possible that he was not distributing it for profit and therefore was not part of the conspiracy that was charged. What this case is more akin to are cases like Edwards where this court has said the defendants who purchased large quantities of drugs, again here, half pounds, three pound quantities of drugs, through a key distributor are presumed to know that they're part of a wide-ranging venture. The fact that Mr. Sanchez was able to call up and fairly promptly get anywhere between a half pound and three pounds of methamphetamine delivered for clients he had waiting shows that he knew that Mr. Lopez had drugs on hold. And Mr. Sanchez, not wanting to keep drugs on his own person, presumably for liability purposes because he didn't want to get caught with them, would know that Mr. Lopez would have other buyers, or at least this court, as it said in cases like Edwards, could infer that he had other buyers and that he wasn't a part of just this isolated conspiracy. Thank you. Judge Briscoe? Well, I'm curious why we're talking about the larger conspiracy. Do you care? Is it enough for your case to prove that he was guilty of participation in the smaller conspiracy, that is a chain conspiracy as opposed to a wheel? Well, you know, to dissect that question, as a practical matter, it does not matter whether he was part of a broader conspiracy or the smaller conspiracy. Because it seems to me from the arguments you're making, I mean, you're making the argument that the defendant is making. In other words, let's get confused about this and determine whether or not there's sufficient evidence to determine that this defendant is guilty of involvement in the large Lopez wheel conspiracy. And, Your Honor, I fully agree that the court doesn't have to go there. And, in fact, my backup argument is that, as pointed out in the brief, that any variance would not be fatal. And just to give a slight bit of background, the main reason I'm pushing the broader conspiracy is our office often prosecutes large-scale conspiracies. Now, if this court wants to bypass that question... Well, why talk about other cases? Talk about this case, the evidence for this case. We don't care what you normally do. Let's talk about this case. Yes, Your Honor. So, even assuming the court were to assume that there were variants, the variance isn't fatal. Because this court has said that a variance is fatal, essentially, if they're potentially fatal in two respects. Was the defendant deprived of notice? Here, the answer to that question is no. Because the smaller conspiracy, to the extent that it's a smaller conspiracy, was wholly contained within the larger conspiracy alleged in Count 1 of the superseding indictment. So, no notice problem there. Then the other potential problem would be prejudicial spillover. This court in Hill explained that there are three factors for prejudicial spillover. First, whether the separate conspiracies affected the jury's ability to evaluate each defendant's action. This court and the Supreme Court, in determining that, have asked how many conspiracies were proven at trial. Here, at most, there were two. Taking the assumption that there was a variance, there was Lopez's conspiracy and there was the smaller Lopez-Sanchez conspiracy. The Supreme Court in Berger, this court in Carnegie, and this court in Hill found that two, three, and seven, I believe five conspiracies, respectively, were sufficient to satisfy or to show that there was not a fatal variance in terms of that first factor. Well, I think your best evidence here is one that I've noted not in your brief or reference, but if you look into the record and look at the verdict form, and it seems significant to me that although this is charged in the alternative, either meth or cocaine, the verdict form is very clear and says not guilty on cocaine. So when you talk about spillover and prejudice, that to me seems to be the strongest evidence. I was surprised that wasn't referenced in your brief. Your Honor, I don't have the page number, but I do believe whenever I was discussing the prejudicial spillover, specifically the third sub-factor of the second factor in Hill, I believe I did reference that the jury did not find the defendant guilty of cocaine because there wasn't evidence. And to the extent that the question was whether the jury could actually demonstrate that it compartmentalized the evidence against the defendant, that it did so by finding there was no cocaine. Again, I don't have that page number. Thank you. I have no further questions. Thank you. Judge Matheson? Counsel, just to follow up on the verdict form, I had a question about it too. On count one, the verdict form on Mr. Sanchez's co-defendant finds guilty of the conspiracy charge for 50 grams or more of methamphetamine. And for Mr. Sanchez, the verdict form finds him guilty on count one conspiracy for 500 grams or more, suggesting at the very least that the jury might have found more than one conspiracy as to these two remaining defendants. How do you square these verdict forms with the points that you were just making in response to Judge Briscoe? Well, Your Honor, and I do not have the case off the top of my head, but I do remember that this issue came up about four or five years ago about whether a defendant can be accountable for the entire conspiracy, the drugs that the entire conspiracy dealt with, or only the drugs the defendant was personally accountable for. And I know that the guidance, at least internally, or at least the change that we had in our charging practices when we asked for a jury instruction is asking the jury only to look at what the defendant themselves was accountable for, not what the conspiracy was accountable for in total. And so, I have to admit, I didn't brush up on the facts directly related to Mr. DeVita-Quinones, but my belief would be that he didn't have an excess – he wasn't personally accountable for an excess of 500 grams of methamphetamine. He only – the police would have only found an excess of 50 grams of methamphetamine. And so – In determining the – well, attributing the one-pound, one-ounce? Your Honor, the district court said evidence. The district court didn't say trial evidence. I would submit that most of it's ambiguous. But in any event, I would submit this court's clear error review doesn't look at what the district court necessarily said it considered, but looks at the record as a whole to determine whether the ultimate finding by the district court was clearly wrong in light of the totality of the record on appeal. Well, look, even if we take into account the phone call about stating that Mr. Sanchez was interested in the one and a half pounds, is that alone enough to infer that he actually received that amount? Ultimately, whether or not – and I don't believe I made this part of the argument in the briefing – but ultimately, whether or not he received the amount, it would be sufficient to show that the amount was destined for him, and I believe under relevant conduct standards, would be sufficient to show that he was accountable for that. Because let's assume for a moment – and I know this is not the facts of this case – but let's assume for a moment that police had intercepted the drugs prior to him obtaining possession of them. Let's say somebody else had brought them in the door, and then police had gone in on an anticipatory search warrant. Go ahead and finish your thought. Thank you. Could police have held him accountable for that, even though he never actually physically possessed them? I would submit yes. And so, I would submit that the phone call probably would be enough, but I was responding to Mr. Gee's argument whenever I pointed out that there actually was confirmation in the record. All right, counsel, thank you. I think Mr. Gee had some rebuttal time. You may proceed, Mr. Lennon. Yes, this is Tommy Gee for Mr. Sanchez. I want to talk briefly about the government's position that the court may consider the entirety of the record in clear error review. I don't think that's right, particularly not in this situation. In the answer brief, the government identified two sources of information not introduced into the trial, even though that was what the trial court said it was considering at Supplemental Volume 4, page 126. I want to point out to the court that both of these discovery documents, in fact, were submitted in a James Hearing submission to the trial court. That submission, as we pointed out in the brief, was rejected by the trial court as a violation of its pre-trial orders, and then that submission was resubmitted to the trial court without those documents. That's an important problem with the government's position that this court must consider the entirety of the record. A second and perhaps more fundamental problem is that none of this information, neither one of these discovery documents, was presented to the trial court or considered by the trial court at sentencing. Therefore, the defense counsel did not know that it was supposed to be rebutting this evidence because the trial court said it wasn't considering it. So, that is a fundamental problem with the government's approach that this court ought to consider everything that was ever placed before the trial judge. When the trial judge is saying it is not considering that evidence, under the Clear Error Review, the question is whether the trial judge made an error based on information that he considered. In this case, it seems to me that it's all but confessed that the trial court did not consider that information, and the record bears that out. Judge Briscoe, Judge Matheson, any additional questions? I had one question for the defendant. How many conspiracies are you alleging occurred here or were involved in this case? It's unclear how many there were, but we suggest that we can identify at least two. The two that Your Honor referenced in your questioning of the government's counsel. There was the large... Go ahead and finish. May I finish that thought? Yes, go ahead and finish your thought. Thank you. There was the large Lopez conspiracy, and then there was what Judge Briscoe called the gene conspiracy between Mr. Lopez and Mr. Sanchez. And are you admitting that there's sufficient evidence to support the smaller conspiracy? I think that there is probably sufficient evidence for the jury to conclude that, yes, Mr. Sanchez purchased methamphetamine from Mr. Lopez on those four days. Thank you. Thank you, counsel. We appreciate the arguments. Counsel are excused.